UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:19-CV-00095-LLK

**ANTHONY G. BLAIR**                                                                 **PLAINTIFF**

**v.**

**ANDREW SAUL, Commissioner of Social Security**                    **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying his claim for Social Security disability benefits. The fact and law summaries of Plaintiff and Defendant are a Dockets # 14 and 17. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. (Docket # 10.)

Plaintiff argues that the Administrative Law Judge (ALJ) erred in evaluating the medical opinions of his treating physicians and erred in evaluating his limitations due to fatigue and other subjective symptoms. Because Plaintiff's arguments are unpersuasive and the ALJ's decision was supported by substantial evidence, the Court will AFFIRM the Commissioner's final decision and DISMISS Plaintiff's complaint.

**The ALJ's evaluation of Plaintiff's multiple sclerosis**

Plaintiff suffers from multiple sclerosis. (Administrative Record (AR) at 19.) "Multiple sclerosis is an incurable, progressive disease subject to … periods of remission and exacerbation." *Parish v. Sec'y of Health & Human Servs.*, 642 F.2d 188, 193 (6th Cir. 1981). In *Parish* and in *Wilcox v. Sec'y*, 917 F.2d 272 (6th Cir. 1990), the Sixth Circuit reversed the decisions of the ALJs because they erroneously focused on periods of remission as evidence of ability to engage in substantial gainful activity, while ignoring the longitudinal picture, including periods of exacerbation. "Nevertheless, in this circuit, multiple sclerosis is not per se disabling under the social security regulations." *Jones v. Sec'y*, No. 93-1958, 1994 WL 468033,

at *3 (6th Cir. Aug. 29, 1994) (collecting cases); *see also Paris v. Comm'r*, No. 3:17-CV-567-GNS-CHL, 2019 WL 1107246, at *4 (W.D. Ky. Feb. 19, 2019) (report adopted) (distinguishing *Parish* and *Wilcox* where the ALJ reviewed Paris's MRIs, which showed no new lesions or disease progression, and concluded, based on a longitudinal view, that Paris's multiple sclerosis is "relatively stable" and flare-ups are "infrequent.").

In this case, the ALJ reviewed Plaintiff's medical records to determine if his multiple sclerosis had reached a disabling level of severity during the period of time from December 31, 2014, when Plaintiff alleges he became disabled, through July 5, 2018, when the ALJ issued her decision. (AR at 18, 26.) The ALJ noted that there was one MRI during this period from August 2016, and it showed improvement and suggested overall stability. (Decision at AR at 22 referencing MRI at AR 462-63.) The ALJ further noted that Plaintiff's physical exams from 2015 through 2018 showed 5/5 strength in all extremities, no evidence of motor loss, and normal gait. (AR at 22-23.) The ALJ concluded that "[g]iven the entirety of the record, which documents fairly stable treatment for multiple sclerosis with positive treatment response, improved brain imaging in 2016, and typically intact muscle strength and gait, as well as medication management for depression and anxiety, I have restricted the claimant to less than a full range of sedentary work with postural, environmental, and mental limitations, in addition to the option to change positions at 30-minute intervals." (AR at 23.) These limitations, according to the ALJ, should "address the claimant's complaints of joint pain and fatigue." (*Id.*)

**The ALJ did not err in evaluating the opinions of Plaintiff's treating physicians.**

Plaintiff argues that the ALJ erred in evaluating the opinions of his treating physicians, Drs. Hunter and Derwenskus. Neurologist Samuel F. Hunter, M.D., Ph.D., is associated with Advanced Neurosciences Institute in Franklin, Tennessee, and he treated Plaintiff for multiple sclerosis. In April 2015, Advanced Practice Nurse (APN) Laurel Kagan completed a check-box form on behalf of Dr. Hunter. (AR at 362.) In answering the following question "No," APN Kagan, in effect, opined that Plaintiff is unable to perform any full-time work, at any exertional level:

2

Is your patient able to perform work requiring the following exertion on a regular and continuing basis (8 hour workday, 40 hour workweek), without an unusual number and length of rest periods relating to his/her medical condition(s)?

- Standing and/or walking up to 2 hours of an 8-hour day, and
- Sitting 6 or more hours of an 8-hour day, and
- Lifting and/or carrying up to 10 pounds "occasionally." (Occasionally is defined as up to 2.6 hours per day), and
- Lifting and/or carrying up to a few pounds "frequently." (Frequently is defined as up to 5.3 hours per day).

(AR at 362.) In February 2016, another treating source, Joy Derwenskus, D.O., completed another check-box form in a manner that effectively opined that Plaintiff is unable to perform any full-time work, at any exertional level. (AR at 422-23.) According to Dr. Derwenskus, Plaintiff's "fatigue secondary to multiple sclerosis" limits him to 1 hour of sitting, total, during an entire 8-hour day and 0 hours of standing/walking, total, during an entire 8-hour day. (*Id.*)

From an exertional standpoint, sedentary work is the least demanding type of work (in comparison to light, medium, and heavy work). Sedentary work contemplates 6 hours of sitting per 8-hour workday (with standing/walking during the remaining 2 hours). Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *5. Drs. Hunter and Derwenskus opined than Plaintiff's fatigue and other symptoms preclude 6 hours of sitting per 8-hour workday (and preclude any significant standing/walking). Presumably, Plaintiff must lie down during most of the workday.

A treating source's medical opinion is entitled to controlling weight if it is "[1] well-supported by medically acceptable clinical and laboratory diagnostic techniques and [2] is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(c)(2). The ALJ found the opinions of Drs. Hunter and Derwenskus not entitled to controlling weight under both prongs of this test. (AR at 24.) "When we do not give the treating source's medical opinion controlling weight, we apply [certain factors] in determining the weight to give the medical opinion." Section 404.1527(c)(2). The factors are the length of the treatment relationship, nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating

physician. Section 404.1527(c)(1)-(6). In light of these factors, the ALJ assigned "little weight" to Dr. Hunter's opinion and "very little weight" to Dr. Derwenskus's opinion. (AR at 24.) According to the ALJ, Dr. Hunter's own neurological examination findings showed adequate motor function and gait without the need for a medically prescribed assistive device, and Dr. Hunter "assessed [Plaintiff's] mental residual functional capacity despite not treating him for depression or anxiety." (*Id.*) Dr. Derwenskus apparently saw Plaintiff only once prior to giving her opinion five months later. (*Id.*) "[W]hen asked at the hearing, the claimant was not familiar with Dr. Derwenskus." (*Id.*)

The ALJ's decision reflects consideration of the factors at Section 404.1527(c)(1)-(6). (AR at 24.) While substantial evidence may have supported a different weighing of these factors, the ALJ's weighing was supported by substantial evidence. Therefore, Plaintiff's argument is unpersuasive. *See Blakley v. Comm'r*, 581 F.3d 399, 405-06 (6th Cir. 2009) ("The substantial-evidence standard ... presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.").

Recent federal cases from Ohio and this Court further support a conclusion that the ALJ did not err in evaluating the opinions of Plaintiff's treating physicians. In *Hurlbut v. Comm'r*, Dr. Woo completed a Multiple Sclerosis Residual Functional Capacity Questionnaire, finding that Hurlbut can sit for a total of less than two hours and stand for a total of less than two hours. *Hurlbut v. Comm'r*, No. 2:18-CV-402, 2019 WL 2949846, at *4 (S.D. Ohio July 9, 2019). The ALJ discounted Dr. Woo's opinion because it was inconsistent with Dr. Woo's own examination findings, which showed normal sensation, movement, strength, and gait. *Id.* at *7. *Hurlbut* cited four additional cases in support of the proposition that, in multiple sclerosis cases, ALJs can discount disabling treating physician opinions due to relatively normal physical examination results:

> *James B. C. v. Comm'r of Soc. Sec'y*, 2019 WL 1199834, at *5 n.4 (S.D. Ill. Mar. 14, 2019) ("That plaintiff suffered from fatigue as a common symptom of MS, however, tells nothing about how the symptom is debilitating for the plaintiff, or how it affects his ability to maintain competitive employment with sedentary limitations."); *Sparing v. Soc. Sec. Admin.*, No. 2:12-cv-1572, 2014 WL

4

> 2527117, at *8, 10–11 (D. Nevada June 5, 2014) (finding that the ALJ appropriately rejected treating physician's opinion where that opinion was not supported by objective evidence, including, inter alia, normal motor strength); *Wood v. Astrue*, No. 2:10-cv-132, 2011 WL 3510987, at * (E.D. Tenn. July 26, 2011) (affirming denial of benefits where, inter alia, "[m]ore tellingly, his [treating physician's] treatment notes indicate normal muscle tone and strength, normal ranges of motion, and normal deep tendon reflexes.... These examinations were in 2007 and 2008, the last being only 3 months before the ALJ rendered his decision") …; *Simmons v. Astrue*, 736 F. Supp. 2d 391, 402 (D. N.H. 2010) (affirming denial of benefits where, inter alia, "[i]n the physical evaluations conducted by Simmons' treating physicians she has consistently exhibited normal energy level, awareness, strength, muscle tone, reflexes, gait, etc.").

*Id.* at *9. The reasons given by the ALJs in these cases were similar to those given by the ALJ in this case for discounting the opinions of Drs. Hunter and Derwenskus.

In *Paris v. Comm'r*, neurologist Jason Meckler treated Paris's multiple sclerosis, and he restricted Paris to two hours sitting and two hours standing each eight-hour workday. *Paris v. Comm'r*, No. 3:17-CV-567-GNS-CHL, 2019 WL 1107246, at *5 (W.D. Ky. Feb. 19, 2019) (report adopted). The ALJ discounted Dr. Meckler's restriction, which would preclude even sedentary work, because the objective records "simply [did] not support his extreme limitations," and this Court affirmed. *Id.*

**The ALJ did not err in evaluating Plaintiff's limitations due to fatigue and other subjective symptoms.**

Plaintiff argues that the ALJ erred in evaluating his limitations due to fatigue and other subjective symptoms. In evaluating the intensity, persistence, and limiting effects of subjective complaints, an ALJ considers the factors listed at 20 C.F.R. § 404.1529(c)(3)(i)-(vii). The factors are: "(i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

5

The ALJ's decision reflects consideration of the factors at Section 404.1529(c)(3)(i)-(vii). (AR at 21-23.) While substantial evidence may have supported a different weighing of these factors, the ALJ's weighing was supported by substantial evidence. Therefore, Plaintiff's argument is unpersuasive. *See Blakley v. Comm'r*, 581 F.3d 399, 405-06 (6th Cir. 2009) ("The substantial-evidence standard ... presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.").

## Order

Because Plaintiff's arguments are unpersuasive and the ALJ's decision was supported by substantial evidence, the Commissioner's final decision is hereby AFFIRMED, and Plaintiff's complaint is DISMISSED.

March 3, 2020

Lanny King, Magistrate Judge
United States District Court